**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOLANTA RUDNICKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 CV 07797 |
| | ) | |
| KEYTH SECURITY SYSTEMS, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

**ORDER**

For the reasons set forth in the Statement below, the defendant's motion to dismiss [11] is denied. The parties are directed to file an initial status report by November 20, 2026.

**STATEMENT**

The plaintiff, Jolanta Rudnicka, is suing the defendant, Keyth Security Systems, Inc. ("Keyth"), for sex discrimination and sexual harassment in violation of Title VII of the Civil Rights Act of 1964. Keyth moved to dismiss Rudnicka's complaint, arguing that she was an independent contractor who is not covered by Title VII, and that she also failed to timely file a charge with the Equal Employment Opportunity Commission (EEOC) as required by Title VII. Mot. to Dismiss ("Mot.") 3-4, ECF No. 11. Keyth's motion to dismiss fails. Rudnicka has sufficiently alleged facts at this stage to suggest that she was an employee, not an independent contractor. Rudnicka's EEOC charge was also timely filed because the alleged unlawful conduct occurred in Illinois, which means that Rudnicka had 300 days to file her charge.

According to the complaint, Rudnicka worked for Keyth in Illinois from 2016 to 2022. When she began working in 2016, she performed cleaning duties in Keyth's office buildings and at the home of Keyth's CEO and Owner, Keith Fisher. Starting in 2019, she also began working in the office three days a week for 10 hours per day, performing administrative duties, running errands, and delivering parts to field technicians. Rudnicka claims that she had a company-supplied cell phone, desk, computer, and car. She also had a list of job duties, worked a set schedule, was supervised by 5 managers at Keyth, and was paid by the hour. She was paid as a Form 1099 independent contractor rather than a Form W-2 employee.

Rudnicka claims that beginning in October 2019, an employee at Keyth began spreading sexual rumors about her in the workplace. Then, in November 2019, Fisher met with Rudnicka in his home office and told her that she needed to "be nice" to the other employee if she wanted to continue making money and working full time at Keyth. Fisher then began suggestively touching Rudnicka, who rejected his advances and left. The next day, Fischer made sexual advances toward her again and told her she had been a "bad girl." Rudnicka, fearing she would lose her job if she refused, engaged in oral sex with him. Rudnicka alleges that after that point, she regularly had sexual encounters with Fisher in response to Fisher's job-related threats.

On April 24, 2022, other employees at Keyth learned of the sexual encounters between Rudnicka and Fisher. Fisher instructed Rudnicka to go home, and someone at Keyth called the police, claiming that Rudnicka was trespassing. No one at Keyth formally told her she had been terminated. Rudnicka called Fisher on June 22, 2022 to ask to return to work, and he said they would discuss it in person. When Rudnicka met with Fisher the next day, he said he would think about bringing her back, and then made physical advances towards her that resulted in another sexual encounter. Rudnicka alleges that Fisher has repeated this behavior multiple times since.

Rudnicka filed a charge with the EEOC on March 24, 2023 alleging she had been sexually harassed on a continuous basis. On May 30, 2024, the EEOC notified Rudnicka that it had dismissed the charge. She then filed suit in this Court.

Keyth moved to dismiss on two different grounds. First, Keyth challenges Rudnicka's claim that she was an employee, submitting instead that she worked for her own company named JR Services. In its reply brief, Keyth further alleges that Rudnicka had a crew of people who provided cleaning services for Keyth, that she had other clients, that she transported her crew from one client to another, and that she did not work set hours at Keyth. Second, Keyth argues that Rudnicka's claims are time-barred because all of her allegations concern conduct that occurred more than 180 days before her EEOC charge was filed. Keyth's brief also misrepresents the allegations in the complaint, suggesting that the only harassment alleged in the complaint occurred in October and November of 2019, even though Rudnicka alleged numerous later instances of sexual harassment.

On a motion to dismiss, the Court accepts the pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *Kilborn v. Amiridis*, 131 F.4th 550, 554 (7th Cir. 2025). The Court does not, however, accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Viewed in this light, a complaint must state a facially plausible claim to relief to overcome the motion to dismiss. *Id.*

Title VII makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment" based on sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish a violation of Title VII by proving that sexual harassment has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). "The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome." *Id.* at 68. The complaint clearly alleges multiple instances of unwelcome sexual advances and physical contact by the CEO and owner of Keyth. The complaint also alleges and that this sexual harassment led to Rudnicka's termination, and continued when she tried to return to work. These allegations are sufficient to plead hostile work environment sexual harassment in Violation of Title VII. *See Vinson*, 477 U.S. at 67 (finding allegations of a supervisor's sexual advances and demands for sexual favors are sufficient to state a claim under Title VII). The Court will now turn to whether Rudnicka is covered by Title VII, and whether her claim is within the statute of limitations.

Keyth argues that Rudnicka cannot sue under Title VII because she is an independent contractor, and Title VII does not apply to independent contractors. *See Worth v. Tyler*, 276 F.3d 249, 262 (7th Cir. 2001). Rudnicka counters that although Keyth paid her as an independent contractor, she was in reality an employee. Compl. 3 ¶ 14, ECF No. 1. In this Circuit, courts use

the non-exclusive *Knight* factors to determine whether a worker, based on the "economic realities," was an employee or independent contractor for the purposes of Title VII. *See Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378-79 (7th Cir. 1991). The factors are:

> (1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work, (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace, (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations, (4) method and form of payment and benefits, and (5) length of job commitment and/or expectations.

*Id.* Of these factors, "the employer's right to control is the most important." *Id.* at 378. The Seventh Circuit has recognized that the *Knight* factors include considerations such as "the length of time during which the individual has worked" and "the method of payment, whether by time or by the job." *See Wells v. Freeman Co.*, 94 F.4th 608, 614 (7th Cir. 2024) (quoting *Knight*, 950 F.2d at 379 n.2).

The first *Knight* factor, the employer's control, is the most important, and it favors employee status. "[T]he key powers evincing control are the right to hire and fire the plaintiff." *Bronson v. Ann & Robert H. Lurie Children's Hosp. of Chicago*, 69 F.4th 437, 449 (7th Cir. 2023). Here, Rudnicka alleges that Fisher pressured her by making threats against her job and, after her termination, would meet with Rudnicka to discuss bringing her back. In other words, Keyth's CEO frequently discussed hiring or firing Rudnicka. Further, Rudnicka alleges that Keyth set her schedule, gave her a list of job duties, and supervised her work through its managers. These allegations all suggest that Keyth exercised sufficient control over Rudnicka to create an employer/employee relationship.

The second factor, the kind of occupation and training required, does not heavily favor either position, because the complaint did not allege that she was provided with any specialized training or had unique skills. She did claim that she was supervised by managers, and a job that requires substantial training and supervision could make employee status more likely. *See Worth*, 276 F.3d at 263.

The third factor points toward employee status. "If an entity bears costs of operation—such as for equipment or office space— an employee/employer relationship is more likely." *Id.* at 264. Rudnicka alleges that she was provided with a desk and computer in one of the company's offices, and that she also was given a company phone and car. These workplace and equipment costs, which an independent contractor would usually bear on their own, weigh in favor of an employer/employee relationship.

The fourth factor favors independent contractor status. Rudnicka claims she was paid by the hour, which is typical for employees. *See Wells*, 94 F.4th at 616. But more importantly, she reported payments using Form 1099, which is used to report non-employee compensation, and therefore is appropriate for independent contractors. *See Mazzei v. Rock-N-Around Trucking, Inc.*,

246 F.3d 956, 964 (7th Cir. 2001); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1151-52 (7th Cir. 1998).

The fifth factor favors employee status. According to the complaint, Rudnicka worked at Keyth for roughly six years, so her work was not a one-off job or a fixed-term contract. *Cf. Est. of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 567 (7th Cir. 2009) ("[W]here a person is engaged to work for a company for a limited period of time . . . that fact favors independent contractor status.").

After applying the *Knight* factors, Rudnicka has alleged facts that, if true, would make her an employee for Title VII purposes. Keyth acknowledges the *Knight* factors as the relevant test,[1] but it provides almost no analysis of the factors. Instead, Keyth dismisses the factual allegations of the complaint as conclusory, even though many of them are plainly well-pleaded factual allegations. Keyth claims, for example, that Rudnicka did not describe what duties she performed, who was responsible for the costs of her equipment, the form of her payment, and the length of her job, even though these points were all alleged. *See* Mot. 4.

Keyth also contends that Ms. Rudnicka's complaint is time-barred because her EEOC charge had to be filed within 180 days of the unlawful employment practice. Mot. 4. This is incorrect. The alleged discrimination occurred in Illinois, which is a "deferral" state under Title VII. 42 U.S.C. § 2000e-5(e)(1); *Lever v. Northwestern Univ.*, 979 F.2d 552, 553 (7th Cir. 1992); *see also Quinn v. Chicago Transit Authority*, 2018 WL 4282598, at *4 n.1 (Sept. 7, 2018) ("The EEOC and the Illinois Department of Human Rights . . . have a work sharing agreement."). This means that an aggrieved person has 300 days from the date of the discriminatory action to file an EEOC charge. *See Lever*, 979 F.2d at 553. The 180-day deadline that Keyth cites applies to unlawful practices that occur in non-deferral states. 42 U.S.C. § 2000e-5(e)(1). March 24, 2023, the date the EEOC charge was filed, is less than 300 days after June 23, 2022, the date of one of the alleged incidents of sexual harassment.

Although it did not even acknowledge that Illinois is a deferral state in its motion to dismiss, Keyth argues in its reply brief that the 300-day deadline only applies if the plaintiff first files a complaint with the Illinois Department of Human Rights (IDHR) within 180 days. The caselaw on this question is unclear. *See Garrick v. Moody Bible Inst.*, 412 F. Supp. 3d 859, 867 (N.D. Ill. 2019) (compiling cases). This question is unnecessary to resolve, however, because "[f]ailure to timely file an administrative charge is an affirmative defense," *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009), and plaintiffs ordinarily need not plead around affirmative defenses, *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Thus, "dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense." *Id.*; *see also Garrick*, 412 F. Supp. at 868 (denying dismissal for failure to timely file an EEOC charge when the complaint did not mention whether the plaintiff filed a charge with the state agency beforehand). The complaint does not mention whether Rudnicka filed a complaint with the IDHR, and it would be improper to make an

[1] Keyth bafflingly suggests in its reply brief that *Knight* is not a persuasive authority for Rudnicka because the plaintiff in *Knight* was an independent contractor. Reply 3, ECF No. 15. But Keyth acknowledged in its original motion that *Knight* provides the governing test for determining employee status in this Circuit. *See* Mot. 3.

unfavorable assumption against the plaintiff to grant dismissal. Further, the complaint alleges additional instances of sexual advances that occurred after June 23, 2022, though the complaint does not provide dates. Compl. 6 ¶ 30. Rudnicka's EEOC charge from March 24, 2023 alleges that the harassment extended to the present. Compl. Ex. A. In light of these allegations, this Court cannot conclude, based on the face of the complaint, that no instances of harassment occurred within 180 days of Rudnicka filing the EEOC charge.

In its reply brief, Keyth attempts to argue that Rudnicka's complaint is time-barred because she was "put on notice of a potential claim as early as October 2019." Reply 4-5. In doing so, Keyth blatantly misstates the law and cites to abrogated precedent. Keyth cites *Conrad v. City of Chicago*, 954 F. Supp. 180, 182 (N.D. Ill. 1997), which in turn relied on the Seventh Circuit's decision in *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164 (7th Cir. 1996). But the Supreme Court explicitly abrogated *Galloway* in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 106-08, 117-18 (2002). As the *Morgan* Court explained, when, as here, the plaintiff alleges a hostile work environment, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered." *Id.* at 117. Keyth should have known that, because Keyth cited *Morgan* in its motion to dismiss,[2] Mot. 4, and Rudnicka also informed Keyth of *Morgan*'s holding in her response. Resp. 9, ECF No. 14.

*   *   *

The defendant's motion to dismiss [11] is denied. The parties are directed to file an initial status report by November 20, 2026.

Date: November 9, 2026

John J. Tharp, Jr.
United States District Judge

---

[2] Keyth cited *Morgan* to argue that an EEOC charge must be filed within 180 days, but in doing so misleadingly omitted that *Morgan* acknowledges that a plaintiff has either 300 or 180 days to file an EEOC charge depending on the state. *Morgan*, 546 U.S. at 109-10.